**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

REMI ROHL, *on behalf of herself and all
others similarly situated*,

                      Plaintiff,

                   v.

PROFESSIONAL FINANCE COMPANY,
INC.,

                      Defendants.

Civil Action No. 21-17507 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendant Professional Finance Company, Inc. ("PFC") Motion to Dismiss Plaintiff Remi Rohl's ("Rohl") Amended Complaint. (ECF No. 13.) Rohl opposed (ECF No. 17), and PFC replied (ECF No. 20). The United States (the "Government") also filed a brief in support of the constitutionality of the Fair Debt Collection Practices Act ("FDCPA"). (ECF No. 35.) PFC responded to the Government's submission (ECF No. 38), to which the Government replied (ECF No. 39). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court lacks subject matter jurisdiction over this action, the Motion is denied as moot, and the case is remanded to the Superior Court of New Jersey, Monmouth County.

**I.      BACKGROUND**

This putative class action arises out of PFC's alleged violations of the FDCPA, 15 U.S.C. §§ 1692, *et seq.* This story begins before January 1, 2020 when Rohl incurred a $742.40 debt with

Dental Care at Palladium ("Dental Care"). (Compl. Ex. A *16, ECF No. 1-1.) At some point, Rohl defaulted on the debt and Dental Care referred it to PFC. (Compl. ¶ 25.) Thereafter, Rohl received a debt collection letter (the "Collection Letter"). According to the Complaint, PFC used an unnamed third-party vendor to send the Collection Letter. (*Id.* ¶ 27.) The Collection Letter included information such as Rohl's alleged status as a debtor, the amount of the debt, Rohl's residential address, and other personal information. (*Id.*) Furthermore, the Collection Letter included an additional 25% collection fee, bringing the total debt to $928.00, more than what Rohl originally owed. (*Id.* ¶¶ 35-36.) Additionally, the letter had two sections entitled "Interest Rate %" and "Accrued Interest $" that were both marked "N/A." (*Id.* ¶ 35.) On January 6, 2021, however, Dental Care accepted the original amount due, $742.40, as payment in full. (*Id.* ¶ 40.)

On September 21, 2021, Rohl initiated a putative class action in the Superior Court of New Jersey, Monmouth County. (*See generally* Compl., ECF No. 1-1.) PFC removed the Complaint to this Court on September 24, 2021. (*See* Notice of Removal, ECF No. 1.) The Complaint seeks a declaratory judgment under the New Jersey Declaratory Judgment Act, that PFC violated Rohl's rights and the FDCPA ("Count One"). (Compl. ¶ 46.) The Complaint further claims that PFC violated several provisions of the FDCPA, including §§ 1692c(b), 1692e, 1692f, and 1692g by improperly communicating debt information to a third party, inaccurately adding fees to the amount due, and falsely indicating that interest could accrue in the future ("Count Two"). (*Id.* ¶¶ 47-79.) On October 8, 2021, PFC filed the instant Motion. (ECF No. 13.)

## II.     LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Since subject matter jurisdiction is a threshold requirement for consideration of the sufficiency of the underlying claims, the Court's analysis begins there." *Frame v. Lowe*, No. 09-2673, 2010 WL 503024, at *5 (D.N.J. Feb. 8, 2010).

2

Article III of the United States Constitution limits the judicial power of federal courts to "the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982). Thus, federal courts may only "adjudge the legal rights of litigants in actual controversies." *Id.* (citations omitted). To determine whether there is an actual case and controversy before the Court and "to ensure that federal courts do not exceed their authority[,]" courts look to the doctrine of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). To be sure, standing may be raised by the Court *sua sponte*. *Crisafulli v. Ameritas Life Ins. Co.*, No. 13-5937, 2015 WL 1969176, at *1 n.2 (D.N.J. Apr. 30, 2015) ("Here, the Court raises standing *sua sponte*. Because standing is a constitutional prerequisite for federal court jurisdiction, the issue of standing may be raised by the Court in this manner.")

The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 578 U.S. at 338 (citations omitted.) Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citations omitted). In the pleading stage, as is the case here, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (citations omitted).

## III.   **DISCUSSION**

Article III of the Constitution requires that plaintiffs have standing to assert their claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). At issue here is the threshold question of whether Rohl has suffered an injury-in-fact. *Id.* To show injury-in-fact, Rohl must demonstrate that she has "suffered 'an invasion of a legally protected interest' that is 'concrete and

particularized' and 'actual or imminent, not just conjectural or hypothetical.'" *Id.* (citations omitted.) The particularity element of injury-in-fact requires Rohl to demonstrate that she is "affected in a personal and individual way." *Id.* at 560 n.1. The concrete element requires that the injury be "'real,' and not 'abstract.'" *Spokeo*, 578 U.S. at 340. "Concrete" is not the same as "tangible," however, and Congress has the power to "identify[] and elevat[e] intangible harms" to *de facto* injuries that provide standing. *Id.* at 341. The Supreme Court counsels, however, that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* For that reason, Rohl cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

The Supreme Court recently illustrated these requirements. In *TransUnion LLC v. Ramirez*, a putative class of plaintiffs sued TransUnion, a credit reporting agency, for violations of the Fair Credit Reporting Act ("FCRA"). 141 S. Ct. 2190, 2202 (2021). Before addressing the merits of the plaintiffs' claims, the Court considered whether the class had suffered an Article III injury. *Id.* Concluding that the plaintiffs had suffered none, the Court explained that concreteness turns on whether the alleged injury has a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204 (quoting *Spokeo*, 578 U.S. at 341). Examples of concrete harms include more traditional physical and monetary injuries and intangible injuries like harm to reputation. *Id.* The Court further limited concrete injuries to something more than mere statutory violations. *See id.* at 2204-05 (reasoning that Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is" (citation omitted)). In short, "an injury in law is not an injury in fact." *Id.* at 2205.

The upshot of *TransUnion* is that courts must engage in a two-part inquiry when assessing statutory injuries: first, whether the alleged injury bears a close relationship to a traditionally

4

recognized harm, and second, whether a plaintiff has pled more than a mere injury-in-law. Assessing the injuries here, the Court can glean three potential discreet injuries: (1) PFC sharing Rohl's private information with third parties, (2) PFC tacking on an additional $185.60 to the underlying debt, and (3) fraudulent representations in the Collection Letter. The Court considers each in turn.

To start, Rohl's Complaint alleges that PFC violated the FDCPA by transmitting her personal information to a third-party vendor. Analogizing to more traditionally recognized harms, the harm Rohl alleges most closely resembles a cause of action for public disclosure of private facts. New Jersey courts define that tort as the invasion of privacy "by unreasonable publication of private facts [as occurring] when it is shown that the matters revealed were actually private, that dissemination of such facts would be offensive to a reasonable person, and that there is no legitimate interest of the public in being apprised of the facts publicized." *Romaine v. Kallinger*, 537 A.2d 284, 299 (N.J. 1988) (internal quotations omitted); *see also* Restatement (Second) of Torts § 652D. Neither the Third Circuit nor New Jersey courts have addressed whether dissemination of private information to third-party mail vendors violates this tort. Regardless, courts have addressed that publication is a critical element of this traditional harm. *Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 WL 3574881, at *4 (D.N.J. July 25, 2018) (dismissing public disclosure of private facts counterclaim because the court could not "conclude that there was any publication or dissemination").

Rohl's privacy injury must therefore fail because the Complaint does not allege publication. In New Jersey, the standard for publication means information is made public when it is "communicat[ed] to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge . . . ." *Hamza v. United Cont'l Holdings, LLC*, No. 19-8971, 2021 WL 3206814, at *10 (D.N.J. July 29, 2021) (citing *McNemar*

5

*v. Disney Store, Inc.*, 91 F.3d 610, 622 (3d Cir. 1996)). Applying that standard here, Rohl's

Complaint does not allege that her private information was publicized to the general public. *See*

*Sputz v. Alltran Fin., LP*, No. 21-4663, 2021 WL 5772033, at \*4 (S.D.N.Y. Dec. 5, 2021) (denying

FDCPA claim under mail vendor theory where plaintiff did "not allege that any human being ever

saw his private information.") At best, the Complaint alleges that a small group of PFC employees

or agents may have read the Collection Letter. (Compl. ¶¶ 27-29.) But dissemination to a small

group of employees is far from communicating to a large enough group such that Rohl's

information became public knowledge. *Hamza*, 2021 WL 3206814, at \*10.[1]

Buttressing the Court's conclusion are the numerous district court cases that have weighed

in and found generally pled "mail vendor" theories insufficient for Article III standing under the

FDCPA. For example, in *Pagan v. Convergent Outsourcing, Inc.*, the plaintiffs also alleged that a

debt collector violated the FDCPA by using a third-party letter vendor to mail collection letters.

No. 21-12130, at \*1 (D.N.J. Mar. 30, 2022), ECF No. 17. Ultimately, the court ruled that those

facts were insufficient to show a concrete injury because the plaintiffs did not allege that "anyone

actually read their information (rather than merely processing it), or that there ha[d] *otherwise been*

*publicity to any meaningful degree.*" *Id.* (emphasis added). Similarly, the court in *Barclift v.*

*Keysteon Credit Services, LLC*, concluded that "[e]ven assuming that the employees of the mailing

vendor read [the plaintiff's] personal information, sharing her personal information with 'a small

group of persons is not publicity.'" No. 21-4335, 2022 WL 444267, at \*9 (E.D. Pa. Feb. 14, 2022);

*see also TransUnion*, 141 S. Ct. at 2210 n.6 (noting in dicta that sending information to print

vendors was not considered publication). Notably, that court also collected several cases that

---

[1] Notably, Rohl heavily relies on *Hunstein v. Preferred Collection & Management Services, Inc.*, to argue for her mail vendor theory. 17 F.4th 1016, 1020 (11th Cir. 2021), *reh'g en banc granted, opinion vacated*, 17 F.4th 1103 (11th Cir. 2021). This decision, however, has since been vacated for rehearing.

"determined that the mailing vendor theory does not establish a concrete injury." *Barclift*, 2022 WL 444267, at *8 (listing cases).

Turning to the Complaint's alleged injury stemming from PFC's added fee, that injury is insufficient under another doctrine of standing: mootness. For a federal court to reach the merits of a case, Article III of the Constitution requires an actual "case" or "controversy" between adverse parties. U.S. Const. art. III, § 2, cl. 1. If at any time during the litigation no case or controversy exists, the case becomes moot. *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."); *see also Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

Rohl's Complaint admits that Dental Care "accepted payment of $742.40 as payment in full." (Compl. ¶ 40.) Thus, even if PFC attempted to overcharge Rohl, any injury Rohl suffered was settled by paying off the underlying debt. *See Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992) (noting that "[s]ettlement of a plaintiff's claims moots an action."); *see also Kola v. Forster & Garbus LLP*, No. 19-10496, 2021 WL 4135153, at *5 (S.D.N.Y. Sept. 10, 2021) (dismissing FDCPA claim for lack of standing because the collection letter "left plaintiff in no worse financial position with regard to the debt than she would have been [in] if it had never been sent"). Indeed, Rohl's Complaint does not allege that PFC ever attempted to collect this added fee post-settlement.

Regarding the Complaint's final alleged injury of misrepresentations in the Collection Letter, the Court again looks to *TransUnion* for guidance. As explored above, the Supreme Court held in *Transunion* that an injury-in-law is not an injury-in-fact sufficient to confer Article III standing. *TransUnion*, 141 S. Ct. at 2205. Here, Rohl complains that PFC used misleading

representations to collect by sending the Collection Letter with the suggestion that the balance could increase due to fees in violation of the FDCPA. (Compl. ¶ 62.) On the Court's review, the historical or common law analogue for this injury is fraudulent misrepresentation. To prove that claim, a plaintiff must prove: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Bulboff v. King Aircraft Title, Inc.*, No. 19-18236, 2021 WL 1186822, at *7 (D.N.J. Mar. 30, 2021). The Court takes the facts in the light most favorable to Foley, but the Complaint fails to plausibly allege that she relied on Medicredit's representation such that her injury-in-law is transformed into an injury-in-fact. Indeed, Rohl alleges nothing more than an "informational harm" because PFC attempted to deceive her. *Faherty v. Rubin & Rothman, LLC*, No. 21-650, 2022 WL 1025958, at *4 (D. Conn. Apr. 6, 2022). To be sure, "merely receiving a letter from a debt collector that was confusing or misleading as to the amount owed does not demonstrate a harm closely related to fraudulent or negligent misrepresentation – both of which require some form of reliance – where the recipient's financial condition made the amount of money owed irrelevant." *Kola*, 2021 WL 4135153, at *4.

Finally, Rohl alleges no additional harm because of PFC sending the Collection Letter. For example, the Complaint does not allege that Rohl's credit was harmed, that she lost any opportunities because of the debt, or even that she suffered emotional damages. Nor can the Court identify any other injury that would confer standing on Rohl. The Court therefore finds that Rohl does not allege an injury beyond statutory violations, which the Supreme Court has made clear is not enough to confer standing. *TransUnion LLC*, 141 S. Ct. at 2205 ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their

responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III"). As such, Rohl lacks standing to bring this action.

As Rohl does not have Article III standing to bring this case, the Court remands this action to state court.[2] 28 U.S.C. § 1447(c); *see also Katz v. Six Flags Great Adventure, LLC*, No. 18-116, 2018 WL 3831337, at *9 (D.N.J. Aug. 13, 2018) ("[C]ourts . . . have consistently found that, where a defendant removes a case from state court based on a federal question, but Article III standing is lacking, the proper recourse is to remand the case, rather than to dismiss the action."). The Court will therefore remand this action to Superior Court.

## IV.    CONCLUSION

For the reasons set forth above, and for other good cause shown, the Court denies PFC's Motion as moot and remands this matter to state court. The Court will enter an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[2] The Court declines to exercise jurisdiction over Rohl's state law claims.

9